S. LANE TUCKER
United States Attorney

RYAN D. TANSEY
TOM BRADLEY
Assistant U.S. Attorneys
Federal Building & U.S. Courthouse
101 12th Avenue, Room 310
Fairbanks, Alaska 99701
Phone: (907) 456-0245
Email: ryan.tansey@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>   vs.<br><br>BRIAN KEITH CORTY, and<br>CANDY CORTY,<br><br>                    Defendants. | No. 4:23-cr-00008-RRB-SAO<br><br>COUNT 1:<br>CONSPIRACY TO COMMIT WIRE FRAUD<br>  Vio. of 18 U.S.C. § 1349<br><br>COUNTS 2-4:<br>WIRE FRAUD<br>  Vio. of 18 U.S.C. § 1343<br><br>CRIMINAL FORFEITURE ALLEGATION:<br>  Vio. of 18 U.S.C. § 981(a)(1)(C), and Fed. R. Crim. P. 32.2 |

**INDICTMENT**

The Grand Jury charges that:

GENERAL ALLEGATIONS

At all times relevant to this Indictment:

## The Corporations

1. Ice Fog Holdings LCC ("Ice Fog") was incorporated in the State of Alaska on January 20, 2017, with its business address in Delta Junction, Alaska. Ice Fog was purportedly established as a business to grow, extract, develop, manufacture, and sell products in the medical and recreational marijuana markets in Alaska and other future markets. Ice Fog was doing business as Ice Fog Pro.

2. Wireless Raven Communications Group LLC ("WRCG") was incorporated in the state of Alaska on July 2, 2018, with its principal place of business in Delta Junction, Alaska. WRCG was purportedly a telecommunications company.

## The Defendants

3. Defendant BRIAN KEITH CORTY resided in Delta Junction, Alaska, and was the registered agent and one of the designated managers for Ice Fog. BRIAN CORTY ran Ice Fog and also sold shares and ownership units to investors.

4. Defendant CANDY CORTY resided in Delta Junction, Alaska, and was the registered agent and 100% owner of WRCG, and a designated manager of Ice Fog.

## COUNT 1
(Conspiracy to Commit Wire Fraud)

5. Paragraphs 1 through 4 of the General Allegations section of this Indictment are realleged and fully incorporated herein by reference.

6. From in or around January 2017, through at least January 2020, within the District of Alaska and elsewhere, the defendants, BRIAN CORTY and CANDY CORTY, did knowingly and willfully and with the intent to further the objects of the conspiracy,

combine, conspire, confederate, and agree with each other and others known and unknown to the Grand Jury, to: knowingly, and with the intent to defraud, devise, and intend to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and for the purpose of executing such scheme and artifice, to knowingly transmit and cause to be transmitted in interstate commerce by means of wire communication, certain writings, signs, signals, pictures, and sounds, in violation of 18 U.S.C. § 1343.

## OBJECT OF THE CONSPIRACY

7. It was the object of the conspiracy for the defendants and their co-conspirators to unjustly enrich themselves by misappropriating investor money for their personal use and benefit by making material false and fraudulent representations, and concealing and failing to state material facts concerning, among other things, the profitability of Ice Fog and its affiliates through the purchase of shares and ownership units in these companies, and the defendants' and their co-conspirators' use of the investor funds.

## MANNER AND MEANS OF THE CONSPIRACY

8. In furtherance of the conspiracy, and to accomplish its object, the following manners and means were used, among others:

9. On or around January 20, 2017, BRIAN CORTY and CANDY CORTY incorporated Ice Fog, and later incorporated WRCG.

10. From at least July 2017, until a date unknown, BRIAN CORTY and CANDY CORTY opened and maintained bank accounts in the name of WRCG at financial

institutions located in Alaska. BRIAN CORTY and CANDY CORTY had control over this bank account.

11. From in or around July 2017, until at least in or around January 2020, BRIAN CORTY and CANDY CORTY offered investors shares of stock and units in Ice Fog purportedly to raise capital for the company. These investments often were made through units in private placement offerings, in the form of fractionalized ownership interests in Ice Fog. BRIAN CORTY and CANDY CORTY personally solicited and made material misrepresentations to investors throughout the United States to invest in Ice Fog.

12. Beginning in 2017, BRIAN CORTY hired and enlisted associates to solicit, offer and sell shares in Ice Fog. BRIAN CORTY and his co-conspirators then contacted potential investors, and solicited, offered, and sold shares of stock in Ice Fog to people located throughout the United States.

13. On January 18, 2018, the defendants purchased the Midway Lodge along the Richardson Highway near Delta Junction, Alaska, for the purported purpose of opening a "Bud and Breakfast" that BRIAN CORTY pitched as a "marijuana theme park" that would include glass ceilings so Ice Fog's customers could lie in bed and watch the northern lights, and a location to grow, cultivate, and sell marijuana.

14. The defendants and their co-conspirators directed investors to make payments for Ice Fog's stock and unit shares transactions by transferring funds electronically via interstate wires to bank accounts in Alaska, including a $200,000 investment from investor J.S. on April 19, 2018.

//

Page 4 of 9

Case 4:23-cr-00008-RRB-SAO   Document 2   Filed 04/18/23   Page 4 of 9

15. The defendants and their co-conspirators told investors that Ice Fog was already generating income via contracts for security services. BRIAN CORTY told investors that he expected Ice Fog to make over $3.85 million in annual sales by year one; over $13.05 million in annual sales by year two; and over $23.24 million by year three with an expected return to investors of 30 times their initial investment. The defendants also represented that inspectors from the Alaska Marijuana Control Office had performed inspections on the Midway Lodge, in order to create the impression that their application to become a licensed marijuana grow and dispensary was in the final stages of approval. The defendants and their co-conspirators made these representations even though they knew Ice Fog had no meaningful current or prospective revenue stream and little to no prospect to obtain a license from the Alaska Marijuana Control Office.

16. The defendants and their co-conspirators often made false statements to investors regarding the use of investor funds. For example, BRIAN CORTY asserted to investors that investor proceeds would be used for Ice Fog business purposes, such as renovations to the Midway Lodge and acquiring products for sale. In fact, a majority of all Ice Fog's investor funds were misappropriated by BRIAN CORTY and CANDY CORTY for their personal use.

17. To induce investors to provide money to BRIAN CORTY, CANDY CORTY, and their co-conspirators, the defendants and their co-conspirators made and caused others to make numerous materially false and fraudulent statements to investors, and concealed and omitted to state, and caused others to conceal and omit to state, material facts to investors, including, among other things, the following:

## Materially False Statements

(a) that Ice Fog was generating thousands of dollars per week by providing armed transportation services for the marijuana industry;

(b) that Ice Fog was actively pursuing an application with the Alaska Marijuana Control Office ("AMCO") to become a licensed marijuana cultivator and was in the advanced stages of the licensing process;

(c) that AMCO inspectors had already conducted inspections of Ice Fog's facilities;

(d) that the value of the Ice Fog shares would increase significantly;

(e) that investors would receive a 30-times return on investment;

(f) that Ice Fog was successful and profitable;

(g) that Ice Fog had established contracts that would generate millions of dollars in revenue;

(h) that investor funds would be used for general corporate purposes;

## Concealment and Omission of Material Facts

(i) that BRIAN CORTY and CANDY CORTY and their co-conspirators used a majority of the investor proceeds to pay themselves; and

(j) that Ice Fog Holdings was unsuccessful and unprofitable.

18. Over the course of the scheme, BRIAN CORTY, CANDY CORTY, and their co-conspirators, falsely and fraudulently caused at least 22 individuals to invest in Ice Fog, and raised approximately $722,000 dollars through the sale of "shares" in Ice Fog Holdings.

All of which is in violation of 18 U.S.C. § 1349.

## COUNTS 2-4
(Wire Fraud)

19. Paragraphs 1 through 18 of this Indictment are realleged and fully incorporated herein by reference.

20. From in or around July 2017, until at least in or around January 2020, within the District of Alaska and elsewhere, the defendants, BRIAN CORTY and CANDY CORTY, did knowingly, and with the intent to defraud, devise, and intend to devise a scheme and artifice to defraud as to a material matter, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and by concealment of material facts.

21. The fraudulent scheme was operated and carried out, in substance, as set forth in paragraphs 1 through 18 of this Indictment.

22. For the purpose of executing such scheme and artifice and attempting to do so, the defendants did transmit and cause to be transmitted, by means of wire communication in interstate commerce, certain writings, signs and signals, namely:

//

//

//

//

//

| COUNT | DATES | WIRE TRANSACTION |
|---|---|---|
| 2 | April 19, 2018 | Investor J.S.'s $200,000 wire from a bank account located in New York, NY, to a bank account located in Delta Junction, Alaska. |
| 3 | May 30, 2018 | Investor B.W.'s $12,500 wire from a bank account located in Miramar, FL, to a bank account located in Delta Junction, Alaska. |
| 4 | July 5, 2019 | $25,000 in funds from investor D.S.'s bank account at Bank of America in Durham, North Carolina, into a bank account in Delta Junction, Alaska, following the eDeposit of D.S.'s check. |

All of which is in violation of 18 U.S.C. § 1343.

CRIMINAL FORFEITURE ALLEGATION

The allegations set forth in Counts 1 through 4 are incorporated herein by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

Pursuant to Federal Rule of Criminal Procedure 32.2, notice is hereby given to the above-named defendants that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. § 981(a)(1)(C), and 28 U.S.C. § 2461(c), including but not limited to all property, real or personal, which constitutes or is derived from proceeds traceable to a conspiracy to commit wire fraud and wire fraud as charged in this Indictment.

//

//

//

//

//

All pursuant to 18 U.S.C. § 981(a)(1)(C), and Federal Rule of Criminal Procedure 32.2.

A TRUE BILL.

s/ Grand Jury Foreperson
GRAND JURY FOREPERSON

s/ Ryan D. Tansey
RYAN D. TANSEY
Assistant U.S. Attorney
United States of America

s/ Tom Bradley
TOM BRADLEY
Assistant U.S. Attorney
United States of America

s/ S. Lane Tucker
S. LANE TUCKER
United States Attorney
United States of America

DATE: April 18, 2023